UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GARY L. BRANHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:01-cv-0152-JDT-WTL |
| ) | |
| JOHN W. SNOW, Secretary, United States ) | |
| Department of Treasury/Internal Revenue ) | |
| Service, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON PARTIES' MOTIONS RELATING TO THE ADMISSIBILITY OF**

**PROFFERED EXPERT TESTIMONY[1]**

This cause comes before the court on three motions in limine filed by the Plaintiff (Docket No. 15, Motion Nos. 2, 3, 5), the Plaintiff's supplemental motion in limine (Docket No. 21), and one motion in limine filed by the Defendant (Docket No. 17, Motion No. 7). After carefully reviewing the parties' briefs and supporting materials, and after hearing live testimony and oral arguments on the matter, the court finds as follows:

**I.   BACKGROUND**

In the instant case, the Defendant, Internal Revenue Service ("IRS"), withdrew its job offer as a Special Agent from the Plaintiff, Gary Branham ("Branham"), because the IRS found that Branham's Type 1 Diabetes was not under sufficient control to allow him

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

to perform the essential job functions of the Special Agent position without posing a direct threat to the health or safety of those in the workplace. Branham asked for a reconsideration of the agency's decision. On June 6, 2000, the IRS denied the reconsideration and issued its final decision that Branham was medically ineligible for the Special Agent position. Branham subsequently filed this discrimination action pursuant to the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*

In reaching its final decision, the IRS relied on the medical opinions of two occupational medicine doctors, Drs. Miller and Butler. Both Dr. Miller and Dr. Butler provided the IRS with a recommendation that Branham was medically unqualified to perform the essential functions of the Special Agent position due to the condition of his diabetes. (Def.'s Proffered Exs. 10 & 22.)

Branham admits that Dr. Miller and Dr. Butler may be called as fact witnesses to testify as to the historical facts of this case; however, Branham challenges their qualifications as experts under Rule 702 to opine as to diabetes, diabetes care, or the condition of Branham's diabetes. Branham further argues that Dr. Miller and Dr. Butler should not be permitted to testify as experts as to the essential functions of the job because their testimony will not assist the trier of fact.

The IRS moves to exclude any testimony offered by Branham's diabetes expert, Dr. Clark, relating to the essential functions of the Special Agent position or Branham's ability to perform those functions. The IRS argues that Dr. Clark lacks the expertise in occupational medicine to formulate such an opinion.

## II.	DISCUSSION

### A.	Legal Framework

For an expert's testimony to be admissible, it must comport with the requirements of Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Seventh Circuit recently reemphasized that "Rule 702 has superseded *Daubert*, but the standard of review that was established for *Daubert* challenges is still appropriate." *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005).

Rule 702 and *Daubert* require that the court determine whether the expert testimony is both relevant and reliable. In determining reliability, the court must ascertain whether the expert is qualified in the relevant field and whether the methodology underlying the expert's conclusions is reliable. *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 640 (7th Cir. 2003) (citing *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)). Thus, the court must undertake a three-step analysis in determining whether expert testimony is admissible under Rule 702. First, the witness must be qualified "as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Second, the expert's reasoning or methodology underlying the testimony must be scientifically reliable. *Daubert*, 509 U.S. at 592-93. Third, the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The court will apply this three-step analysis to the expert testimony challenged by the parties.

-3-

### B.   Dr. Miller

Branham challenges Dr. Miller's qualifications as an expert under Rule 702 to offer an opinion as to diabetes, diabetes care, or the condition of Branham's diabetes. In addition, Branham argues that Dr. Miller should not be permitted to give expert testimony on the essential functions of the job because expert testimony in this area will not assist the trier of fact.

While the IRS provided the court with an abundant amount of evidence demonstrating Dr. Miller's expertise in occupational medicine, it failed to show that Dr. Miller has the requisite "knowledge, skill, experience, training, or education" to qualify as an expert on diabetes.  Fed. R. Evid. 702.  Dr. Miller's medical residency education was not in endocrinology or any other area of medicine related to diabetes.  He has not participated in any studies related to diabetes.  He has very little, if any, experience with treating patients with diabetes.  The IRS has not produced any exhibit, document, or testimony demonstrating sufficient knowledge or experience in the area of diabetes. Accordingly, the court finds that Dr. Miller lacks the requisite expertise to qualify as an expert under Rule 702 to offer an opinion related to diabetes, diabetes care, or the condition of Branham's diabetes.

With that said, either party will be permitted to call Dr. Miller as a fact witness in this case.  This case centers around the IRS's final decision to medically disqualify Branham from the Special Agent position.  In reaching that decision, the IRS relied on Dr. Miller's medical recommendation to disqualify Branham.  Because it is important for

the jury to know what the IRS relied on in making its final decision, the content of Dr. Miller's medical recommendation is highly relevant to the case. As such, Dr. Miller may testify as to the actual content of his recommendation. However, to the extent that Dr. Miller's testimony would relate to diabetes, the IRS may not ask Dr. Miller to explain the reasoning of his medical recommendation. In other words, Dr. Miller may testify as to the information and recommendation that he provided to the IRS in the proffered Defense Exhibits 10 and 22. However, he cannot testify as to how he reached that determination and he cannot provide medical justification for his determination. Of course, Branham may waive his objection to such testimony being introduced by soliciting such testimony from Dr. Miller himself.

As to Dr. Miller offering an expert opinion on the essential job functions of a Special Agent position and the general medical qualifications for the position, Branham does not contest that Dr. Miller is qualified and that his expert testimony is reliable. Instead, Branham argues that the testimony will not assist the trier of fact to understand or determine a fact in issue. A central tenet of Rule 702 is that any expert's proposed testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue" in order to be admissible. Fed. R. Evid. 702. In this respect, the helpfulness factor can be thought of as being in league with the relevance inquiry of Rules 401 and 402. *See Porter v. Whitehall Labs.*, 9 F.3d 607, 613 (7th Cir. 1993).

At the heart of this dispute is the question as to whether Branham was medically qualified for the Special Agent position. While Dr. Miller cannot offer an opinion as to the medical condition of Branham (for reasons stated above), Dr. Miller is certainly

qualified to offer opinion as to the physical and mental requirements of the position. The court finds that this type of testimony would be both relevant and helpful to the jury.

Accordingly, Branham's motions in limine and supplemental motion in limine, as they concern Dr. Miller, will be granted in part and denied in part. The IRS may not solicit an opinion from Dr. Miller relating to diabetes or diabetes care, and his testimony as a fact witness will be within the restrictions explained above. However, the court recognizes Dr. Miller as an expert on the functions of the Special Agent position and will allow him to give an opinion regarding these functions.

**C.    Dr. Butler**

Branham's objections to Dr. Butler's testimony are virtually identical to his objections to Dr. Miller's testimony. That is, Branham challenges Dr. Butler's qualifications as an expert under Rule 702 to give an opinion as to diabetes, diabetes care, or the condition of Branham's diabetes. In addition, Branham argues that Dr. Butler should not be permitted to give expert testimony on the essential functions of the job because expert testimony in this area will not assist the trier of fact.

Unlike with Dr. Miller, the IRS has provided sufficient evidence demonstrating that Dr. Butler has the requisite "knowledge, skill, experience, training, or education" to offer expert opinion on the subject of diabetes. Fed. R. Evid. 702. Dr. Butler completed a medical residency in Family Practice in 1981. He practiced in family medicine until 1990. In that practice, he had experience treating individuals with diabetes. In addition, Dr. Butler is a Type II diabetic himself and testified that he keeps up with current

treatments and medical studies on diabetes.  Accordingly, the court finds that Dr. Butler possesses the requisite qualifications to offer expert opinion relating to diabetes and diabetes care.

Once the expert is deemed qualified, the court must address whether the methodology underlying the expert's conclusion is reliable.  *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004).  It is not the court's role to decide whether an expert testimony is correct; instead, the court is "limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound."  *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000) (citation omitted).

In his report, Dr. Butler concluded that Branham was medically ineligible for the position because his diabetes was not sufficiently stable.  He based this opinion on the daily blood glucose testing logs and Branham's hemoglobin A1c levels.  Dr. Butler noted that the daily blood glucose testing logs revealed erratic blood glucose levels, from as high as 327 to seven logs that registered levels below 60.  In addition, Dr. Butler relied on hemoglobin A1c levels of 9.2 on 8/27/1998, 9.0 on 12/9/1998, 7.5 on 3/3/1999, and 6.8 on 6/23/1999.[2]  He reasoned that the low values in the daily blood glucose logs demonstrated periods of hypoglycemia.  He further reasoned that the high A1c levels showed less than adequate control of blood sugar and the potential for hyperglycemic

---

[2] There is some dispute as to the validity of the 9.2 level on August 27, 1998 and the validity of an additional A1c level.  Dr. Butler dismisses this dispute and states that is was merely a typographical error in preparing the report.  He testified that he understood what the correct values were and that his final opinion was not effected by the typographical errors.

-7-

effects. Because of the erratic blood sugar levels, Dr. Butler concluded that Branham's diabetes was not under sufficient control to safely perform the functions of the Special Agent position. In reaching his conclusion relating to Branham's diabetes, Dr. Butler testified that he relied on numerous medical studies, including the DCCT study and the British study.

Again, in judging the reliability of the expert's opinion, it is not the court's duty to determine if the opinion is correct. Instead, the court acts as a gatekeeper to ensure that the underlying reasoning or methodology of the opinion is reliable. Given Dr. Butler's explanation in his report and his testimony at the *Daubert* hearing, the court finds that Dr. Butler has sufficiently established the reliability of his methodology and reasoning. And since Branham does not challenge the relevance of his opinion on diabetes, the court will permit Dr. Butler to offer opinion on diabetes and diabetic care, including the condition of Branham's diabetes during the relevant time period.

Branham further challenges the admissibility of Dr. Butler's expert opinion as it relates to the essential functions of the Special Agent position. Branham argues that the testimony will not assist the trier of fact to understand or determine a fact in issue. The court has already addressed this same argument above, as it related to Dr. Miller. For the same reasons discussed above, the court will permit Dr. Butler to offer expert testimony on the job functions of the Special Agent permission.

Accordingly, Branham's motions in limine and supplemental motion in limine, as they concern Dr. Butler, will be denied. The IRS may solicit an opinion from Dr. Butler

relating to diabetes and diabetes care.  Likewise, the court recognizes Dr. Butler as an expert on the functions of the Special Agent position and will allow him to give an opinion as to these functions.

### D. Dr. Clark

The IRS challenges three different areas to which Dr. Clark may testify.  First, the IRS argues that Dr. Clark should not be permitted to provide testimony which "second-guesses" the IRS's final medical determination.  Second, the IRS argues that Dr. Clark should not be permitted to testify regarding Branham's ability to perform the essential functions of the Special Agent position, as Dr. Clark is not qualified as an expert in the area of law enforcement or the duties of a Special Agent.  Third, the IRS argues that Dr. Clark should not be permitted to testify as to the abilities of other individuals with Type 1 or insulin dependent diabetes as it is not relevant to the case.

As for this ruling, the court is only concerned with the IRS's second and third arguments: that Dr. Clark should not be permitted to testify regarding Branham's ability to perform the essential functions of the Special Agent position nor regarding the abilities of other individuals with Type 1 or insulin dependent diabetes.  The court will defer ruling on the IRS's first argument.

The IRS does not challenge Dr. Clark's qualifications to offer expert opinion in the areas of diabetes and diabetes care.  Instead, the IRS challenges his qualifications to offer opinion as to the essential functions of the position.  The court notes that Dr. Clark will not offer opinion as to what constitutes the essential functions of the job.  To the

extent that Dr. Clark's opinions incorporate the essential functions of the position, Dr. Clark must rely on other sources (e.g., the IRS job description of the Special Agent position). Instead, Dr. Clark will offer opinion as to the condition of Branham's diabetes during the relevant time period. Then Dr. Clark will apply the medical condition opinion to the job requirements and opine as to whether Dr. Clark is medically able to perform those job requirements. Such an opinion is appropriate by a medical expert. Indeed, medical experts are often asked to offer opinions on the state of an individual's medical condition, and how the condition affects his ability to perform the requirements of a job. *See, e.g.*, *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 657-58 (7th Cir. 2001). Thus, Dr. Clark will be permitted to offer expert opinion on whether Branham is medically qualified to perform the functions of the Special Agent position.

Finally, the court must decide whether Dr. Clark should be permitted to testify concerning the abilities of other individuals with diabetes. The record before the court fails to show how such evidence would be relevant to the case of this particular plaintiff. At the hearing, Branham had the opportunity to develop the record to demonstrate the relevancy of such evidence, but failed to do so. Thus, Dr. Clark is not permitted to offer testimony concerning the abilities of other individuals with Type 1 or insulin dependent diabetes.

### III.   CONCLUSION

Accordingly, Branham's motions in limine (Docket No. 15, Motion Nos. 2, 3, 5) and supplemental motion in limine (Docket No. 21), in as much as they concern Dr.

Miller, are **GRANTED** in part and **DENIED** in part.  Specifically, the IRS may not solicit opinion from Dr. Miller relating to diabetes or diabetes care, and his testimony as a fact witness will be within the restrictions explained above.  However, the court recognizes Dr. Miller as an expert on the functions of the Special Agent position and will allow him to give opinion as to these functions.

Branham's motions in limine (Docket No. 15, Motion Nos. 2, 3, 5) and supplemental motion in limine (Docket No. 21), to the extent they concern Dr. Butler, are **DENIED**.  The IRS may solicit opinion from Dr. Butler relating to diabetes and diabetes care.  Likewise, the court recognizes Dr. Butler as an expert on the functions of the Special Agent position and will allow him to give opinion as to these functions.

The IRS's motion in limine (Docket No. 17, Motion No. 7), to the extent it moves to strike Dr. Clark's expert testimony regarding Branham's medical ability to perform the essential functions of the Special Agent position, is **DENIED**.  The IRS's motion, to the extent it moves to strike Dr. Clark's testimony concerning the abilities of other individuals with Type 1 or insulin dependent diabetes, is **GRANTED**.  The court defers ruling on the remainder of the IRS's motion in limine.

ALL OF WHICH IS ORDERED this 28th day of November 2005.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

John W. Griffin Jr.
Houston Marek & Griffin LLP
jwg@lawhmg.com

Jeffrey L. Hunter
Debra G. Richards
United States Attorney's Office
jeff.hunter@usdoj.gov
debra.richards@usdoj.gov

Elizabeth Gardner Russell
Krieg Devault
egr@kdlegal.com