UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

GARY L. BRANHAM,                       )
                                       )
            Plaintiff,                 )
                                       )
    vs.                                )          1:01-cv-0152-JDT-WTL
                                       )
JOHN W. SNOW, Secretary, United States )
Department of Treasury/Internal Revenue )
Service,                               )
                                       )
            Defendant.                 )


**ENTRY ON PLAINTIFF'S MOTION FOR REASONABLE ATTORNEYS' FEES AND
COSTS (Docket No. 86) AND SUPPLEMENT TO HIS MOTION (Docket No. 142)[1]**


On December 12, 2005, a jury found in favor of the Plaintiff ("Branham") and

against the Defendant Internal Revenue Service (the "Government" or "IRS") on

Branham's claim that the IRS discriminated against him in violation of the Rehabilitation

Act of 1973, 29 U.S.C. § 791 *et seq.*  Thus, Branham is the prevailing party on his

Rehabilitation Act claim.


Branham filed his initial motion for attorneys' fees and costs on January 17,

2006, to which the Government responded on March 31, 2006.  Branham filed a reply

on April 25, 2006.  Branham filed a supplement to his motion for attorneys' fees and

---

[1]  This Entry is a matter of public record and will be made available on the court's web
site.  However, the discussion contained herein is not sufficiently novel to justify commercial
publication.

costs on May 8, 2006.  The Government responded on May 23, 2006.[2]  The motions are now ripe for the court's review.

## I.      PLAINTIFF'S RIGHT TO ATTORNEY FEES

The Rehabilitation Act allows the court to award costs and attorney's fees to the prevailing party.  29 U.S.C. § 794a(b).  A party seeking attorney's fees bears the burden of demonstrating that its fee request is reasonable.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 437 (1983).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley*, 461 U.S. at 433.  This amount is known as the lodestar.  *See*, *e.g.*, *Harper v. City of Chi. Heights*, 223 F.3d 593, 604 (7th Cir. 2000).  The court may adjust the lodestar amount upward or downward depending on a number of factors, commonly referred to as the *Hensley* factors.  *See Hensley*, 461 U.S. at 434 & n.9; *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999).  The degree of success achieved is the most critical factor.  *See Hensley*, 461 U.S. at 434, 435-36, 440.  The court has wide discretion in determining the appropriate amount of a fee award.  *Id.* at 437.

---

[2]  At the May 2, 2006 hearing on instatement, the court ordered Branham to supplement his motion for fees and costs within fourteen days.  The court granted the Government fourteen days (14) to respond upon Branham's filing of his supplemental motion.  The Government filed its response on May 23, fifteen (15) days after Branham's supplemental motion.  Branham now moves to strike the Government's response as untimely.  As the Government correctly indicates, Local Rule 7.1 and Federal Rule of Civil Procedure 6(e) grant the Government three additional days to file its response.  Accordingly, the Government's response was timely and the court will **DENY** Branham's motion to strike (Docket No. 148).  In addition, the court finds that this motion to strike was neither reasonable nor necessary to Branham's litigation and the court will disallow all fees and costs associated with this motion.  These fees and costs, however, are not at issue in this entry.

The party seeking a fee award "should submit evidence supporting the hours worked and the rates claimed." *Id.* at 433. If the documentation is insufficient, the court may reduce the award. *Id.* Counsel should exercise billing judgment. *Id.* at 434. Any hours "not reasonably expended," *i.e.*, hours which are excessive, redundant, or otherwise unnecessary, should be excluded. *Id.*; *see Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004).

Branham's initial petition for attorney's fees seeks $826,338.50 in attorney's fees incurred up to January 17, 2006. His supplemental fee petition seeks $104,530[3] in attorney's fees incurred during the period since January 17, 2006, up to May 8, 2006. The following chart breaks down the requested amount:

---

[3] The supplemental fee petition states that Krieg DeVault billed $44,691.25 during this time period. However, Krieg DeVault's supplemental billing statement only shows $43,971.25 of additional fees. The reason for the discrepancy is unknown, but the court will use the amount demonstrated in the billing statement, which is the lower of the two amounts.

|  | NAME | TITLE | TIME | RATE | AMOUNT |
|---|---|---|---|---|---|
| **Marek & Griffin** | John Griffin | Partner | 1034.25 | $325.00 | $336,131.25 |
|  | Rebecca Rozmus | Associate | 127.8 | $250.00 | $31,950.00 |
|  | Robert McKnight | Subcontractor | 79.8 | $258.31[4] | $21,257.50 |
|  | Richard Soliz | Paralegal | 37.25 | $75.00 | $2,793.75 |
|  | William Smith | IT Specialist | 46 | $50.00 | $2,300.00 |
|  | Lisa Reinke | Paralegal | 22.75 | $75.00 | $1,706.25 |
|  | Pauline Rivera | Paralegal | 0.5 | $75.00 | $37.50 |
|  | **Subtotal (Marek & Griffin):** |  |  |  | $396,176.25 |
|  | Lodestar Enhancement Request: |  |  |  | $134,550.00 |
|  | **Total (Marek & Griffin)** |  |  |  | $530,726.25 |
| **Krieg DeVault** | Elizabeth Russell | Partner | 758.30 | $320.00 | $242,656.00 |
|  | Linda Cooley | Partner | 231.25 | $285.00 | $65,906.25 |
|  | Amy Adolay | Associate | 76.75 | $220.00 | $16,885.00 |
|  | Andrew Deibert | Paralegal | 29.25 | $170.00 | $4,972.50 |
|  | Rebecca Elmore | Associate | 13.5 | $180.00 | $2,430.00 |
|  | Libby Mote | Associate | 3.5 | $265.00 | $927.50 |
|  | Greg Small | Law Clerk | 1 | $125.00 | $125.00 |
|  | **Subtotal (Krieg DeVault):** |  |  |  | $333,902.25 |
|  | Lodestar Enhancement Request: |  |  |  | $66,240.00 |
|  | **Total (Krieg DeVault):** |  |  |  | $400,142.25 |
| **Plaintiff's Total Fee Request:** |  |  |  |  | $930,868.50 |

The Government contests the reasonableness of the Plaintiff's fee request. In particular, the Government argues that the hourly rates are excessive, the amount of time billed is excessive, and that a lodestar enhancement would be inappropriate in this case. The court will discuss these each of these arguments below:

---

[4] Although Mr. Griffin's and Mr. McKnight's affidavits indicate that $275.00 is the requested rate for Mr. McKnight, the Marek & Griffin initial bill statement computes Mr. McKnight's fees at a rate of $258.31. Since Branham's requested fee amount is based on the amount requested by the initial bill statement ($335,617.50 from Marek & Griffin), the court will follow Mr. McKnight's rate as indicated and computed on that bill statement. However, the supplemental bill statement computes Mr. McKnight's fee at a rate of $275.00, and the court will use that rate for the hours indicated in the supplemental bill statement.

## A.   Hourly Rates

The party seeking a fee award has the burden of proving its attorney's reasonable hourly or market rate.  *See Mathur v. Bd. of Tr. of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003); *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 554 (7th Cir. 1999).  An attorney should be compensated for the amount he would have earned from a paying client.  *See Mathur*, 317 F.3d at 742; *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993).  "The attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate."  *Spegon*, 175 F.3d at 555 (quotation omitted).  If, however, the attorney does not produce evidence of his actual billing rate, then the court should consider "the next best evidence," which includes evidence of the rates that attorneys of similar experience and ability in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases.  *Stark*, 354 F.3d at 674; *Spegon*, 175 F.3d at 555.  Once the attorney produces evidence of his market rate, the defendant bears the burden to show why a lower rate would appropriate.  *Spegon*, 175 F.3d at 555.

1.   <u>Hourly Rates for Mr. Griffin and Others at Marek & Griffin</u>[5]

First, the Government argues that Branham has failed to demonstrate that Mr. Griffin's hourly rate of $325.00 is reasonable for the Indianapolis area.  (Def.'s Resp. Opp'n Fee Pet. 4-7.)  However, Branham provides Mr. Griffin's affidavit in which he

---

[5]  This firm's name was Houston, Marek, & Griffin, L.L.P. until January 1, 2006, when a senior partner retired and the firm name changed to Marek, Griffin & Knaupp, L.L.P.  The parties commonly refer to the firm as "Marek & Griffin," and the court will also.

states that his $325.00 hourly rate is the rate that his firm presently charges its fee-paying clients for his time.  (Mem. Supp. Fee Pet. Ex. 1, ¶ 26.)  In addition, Mr. Griffin points out that, in August 2003, a district judge in the Western District of Texas awarded him fees at the rate of $300.00 per hour for his time.  (*Id.* ¶ 27.)  Branham also provides the affidavit of G. Ronald Heath, who has practiced law in Indianapolis for forty years and is very experienced with the billing practices of local law firms.  (Mem. Supp. Fee Pet. Ex. 4.)  Mr. Heath states that, in 2006, Indianapolis firms of the same reputation, experience, and ability as the attorneys at Krieg DeVault and Marek & Griffin charge fees from $180.00 to $415.00 per hour.  (*Id.* ¶ 10.)  These comparable firms "generally charge a higher hourly rate for the services of more experienced attorneys."  (*Id.*)  Mr. Griffin is an experienced litigator.  He began private practice in 1983 and has been the managing partner of his firm since 1989.  Branham has produced evidence establishing that $325.00 is the hourly rate Mr. Griffin charges his clients and that such a rate is reasonable for an experienced Indianapolis attorney.  Based on this evidence, the court must presume that $325 is the appropriate market rate.  *See Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003) ("The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate."); *Mathur*, 317 F.3d at 743-44 (same).

In an attempt to overcome this presumption, the Government produces the affidavit of James P. Schratz, a lawyer and principal of a firm that "conducts legal audits of various law firms throughout the country."  (Schratz Aff. ¶ 5.)  Mr. Schratz opines that "the billing rates requested in the instant fee petition are inadequately supported, and, to

a large extent without basis, and speculative." (*Id.* at 30.)  In support of this argument, Mr. Schratz directs the court to *Young v. Daimler Chrysler Corp.*, No. IP 01-0299-C-M/S, 2004 WL 2538640 (S.D. Ind. Oct. 25, 2004), an ADA case in which the court computed the lodestar amount using a rate of $275.00 per hour for lead counsel.  What Mr. Schratz and the Government fail to point out, however, is that $275.00 was the rate that lead counsel in *Young* regularly charged his non-contingency fee-paying clients.  *Id.* at *2.  In the present case, the evidence indicates that Mr. Griffin charges his non-contingency fee-paying clients $325.00 per hour (Mem. Supp. Fee Pet. Ex. 1, ¶ 26), and that such a rate is reasonable in the Indianapolis market (Mem. Supp. Fee Pet. Ex. 4, ¶ 10).  Nevertheless, Mr. Schratz, somewhat arbitrarily, recommends to the court that a reasonable rate would fall between $275.00 and $300.00 per hour.  (Schratz Aff. 33-34.)  The court notes that while Mr. Schratz has "personally supervised or conducted approximately 900 legal fee audits throughout the country," (*id.* ¶ 5), he has not demonstrated himself to have any familiarity with the Indianapolis legal market.  The court must conclude that Branham has provided sufficient evidence to establish the presumption that $325.00 is the market rate for Mr. Griffin's services, and that the Government has failed to provide sufficient evidence to rebut that presumption.  Accordingly, the court will calculate the lodestar amount using an hourly rate of $325.00 for Mr. Griffin's services.

The Government likewise challenges the proposed rates for others at Marek & Griffin and recommends the following reductions: Rebecca Rozmus (Associate), reduce from $250.00 to $225.00 per hour; and Robert McKnight (Subcontractor), reduce from

$258.31[6] to $225.00 per hour.  However, Mr. Griffin's affidavit asserts that the requested

rates are the rates actually charged to their fee-paying clients for the services performed

by these attorneys.  Likewise, Mr. Heath's affidavit establishes that these are

reasonable rates.  This evidence creates a presumption that these rates are indeed the

market rates for the services of these attorneys.  The Government and Mr. Schratz

provide insufficient evidence or reasoning to justify a reduction of these rates.  Thus, the

court will compute the lodestar amount using Branham's requested rates for these

attorneys.

      2.    <u>Hourly Rates for Ms. Russell and Others at Krieg DeVault</u>

In a similar fashion, the Government requests that the court reduce Ms. Russell's

rate from $320.00 to $275.00 per hour.  However, Branham provides Ms. Russell's

affidavit in which she states that her $320.00 hourly rate is the rate that her firm

presently charges its fee-paying clients for her services.  (Mem. Supp. Fee Pet. Ex. 2, ¶

28.)  As already explained, Mr. Heath's affidavit establishes that this hourly rate is within

the reasonable range for comparable attorneys at comparable firms in the Indianapolis

area.  (Mem. Supp. Fee Pet. Ex. 4.)  The court also notes that Ms. Russell has

performed as a most capable litigator in other cases in this district during her years of

---

      [6] As explained above, Mr. Griffin's and Mr. McKnight's initial affidavits indicate that $275.00 is the requested rate for Mr. McKnight.  However, the initial Marek & Griffin bill statement computes Mr. McKnight's fees at a rate of $258.31.  Since Branham's requested fee amount is based on the amount requested by the bill statement ($335,617.50 from Marek & Griffin), the court will follow Mr. McKnight's rate as indicated and computed on the initial bill statement.  However, the supplemental bill statement computes Mr. McKnight's fee at an hourly rate of $275.00, and the court uses this rate for the hours indicated in the supplemental bill statement.

practice here, and the high quality of her skills were again demonstrated in this case. Thus, the evidence supports a presumption that $320.00 per hour is the market rate for Ms. Russell's services.

The Government again relies on Mr. Schratz's affidavit in an attempt to rebut this presumption. However, for the same reasons Mr. Schratz's opinion fails to overcome the presumption regarding Mr. Griffin's rate, it also fails to overcome the presumption regarding Ms. Russell's rate. Thus, the court will compute the lodestar amount using $320.00 as the hourly rate for Ms. Russell.

The Government likewise challenges the proposed rates for others at Krieg DeVault and recommends the following reductions: Linda Cooley (Partner), reduce from $285.00 to $225.00 per hour; Amy Adolay (Associate), reduce from $220.00 to $175.00 per hour; Andrew Deibert (Paralegal), reduce from $170.00 to $100.00 per hour; Rebecca Elmore (Associate), reduce from $180.00 to $150.00 per hour; Libby Mote (Associate), reduce from $265.00 to $175.00 per hour; and Greg Small (Law Clerk), reduce from $125.00 to $100.00 per hour. However, the evidence in the record (Ms. Russell's and Mr. Heath's affidavits) creates a presumption that these rates are indeed the market rates for the services of these individuals. The Government and Mr. Schratz provide insufficient evidence or reasoning to justify a reduction of these rates. Thus, the court will compute the lodestar amount using Branham's requested rates for these individuals.

**B.      Reasonableness of Hours Expended**

The Government further argues that the court should reduce the requested fee because "the amount of time spent on many tasks, either because of billing by multiple attorneys or simply spending too much time given an issue's complexity, is excessive." (Def.'s Resp. Opp'n Fee Pet. 9.)  While the Government provides a summary of its requested reductions, which breaks down the reductions in specific categories, its memorandum provides very little specificity or explanation as to why the court should grant these deductions.  Instead, the Government apparently defers to Mr. Schratz's affidavit to provide a more specific explanation in support of its proposed reductions.[7] Regardless, the court will address each of the Government's (or Mr. Schratz's) contentions.

1.      Billing Deficiencies—Marek & Griffin

The Government requests that the court reduce Marek & Griffin's total fees by 5% due to "vague, unspecified or quarter hour billing."  (Def.'s Resp. Opp'n Fee Pet. 21.)  "[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage."  *Harper v. City of Chi. Heights*, 223 F.3d 593, 603 (7th Cir. 2000) (citations omitted).  The Government directs the court to sixteen (16) of Mr. Griffin's time entries,

---

[7]  It should be noted that a great portion of Mr. Schratz's Affidavit is conclusory and argumentative, actually more like a brief than evidence, so it is easy to understand why the Government provides no greater explanation in its briefing.

alleging that they fail to detail the tasks with sufficient particularity.  (Def.'s Resp. Opp'n Fee Pet. 14-15.)  The court disagrees with the Government.  The challenged entries may be short in description, but, especially when taken in context with the immediately surrounding entries, these challenged entries provide sufficient information to document the work completed by Mr. Griffin.  For example, the Government challenges the September 27, 2005 entry, which states that Mr. Griffin spent 1.5 hours to "Prepare exhibit list."  No doubt that the entry is brief, but a longer description is unnecessary here.  A succinct description is not necessarily a vague or inadequate description.  The court also notes that the nature of this litigation and the volume of documents implicated justifies the expenditure of that amount of time in preparing a list.  A fair degree of judgment had to be exercised to determine what to include and exclude.  The same would be true with respect to the other fifteen disputed entries.  Here, each of the challenged entries provide an adequate description to appropriately document Mr. Griffin's charges.

The Government also asserts that a 5% reduction would be appropriate based on Mr. Griffin's practice of billing in quarter-hour increments.  While the Seventh Circuit has not discussed the reasonableness of billing in quarter-hour increments, some of this court's sister courts have addressed the issue.  In *Morimanno v. Taco Bell*, 979 F. Supp. 791, 799 (N.D. Ind. 1997), the district court ruled that "[b]illing by the quarter-hour does not *ipso facto* call for a reduction. . . .  If [Plaintiff's counsel] charges their paying clients by the quarter-hour, then there is no reason they should be forced to adjust their usual billing procedures just because Taco Bell . . . does not pay their lawyers in the

same way."  *See also Herrojon v. Appetizers And, Inc.*, No. 97 C 5149, 1999 WL

116598, at *3 (N.D. Ill. Feb. 22, 1999) (explaining that, with respect to quarter-hour

billing, "[w]e do not think such billing is inappropriate and will not force a firm to change

its established billing procedure"); *but see Lopez v. S.F. Unified Sch. Dist.*, 385 F. Supp.

2d 981, 993 (N.D. Cal. 2005) (reducing fee award by 10% to account for the practice of

billing by the quarter-hour); *Zucker v. Occidental Petroleum Corp.*, 968 F. Supp. 1396,

1403 (C.D. Cal. 1997) (reducing fee award by 5% due to attorney's practice of rounding

to the nearest quarter hour); *Miller v. Bowen*, 639 F. Supp. 832, 836 (E.D.N.C. 1986)

(ordering a 25% reduction in attorney's fee award for reasons including the use of

quarter-hour increments to record time).  Perhaps billing in six-minute increments is the

better practice; however, the court agrees with the district courts in this circuit that if it is

the regular practice of the firm to bill in quarter-hour increments, then the court will not

force them to change that practice in this case.  Here, both Mr. Griffin and Ms. Russell

state that it is the regular practice of their firms to bill time rounded to the nearest

quarter hour.  (Griffin Aff. ¶ 23; Russell Aff. ¶ 6.)  Thus, the quarter-hour billing is not a

deficiency and does not justify a general 5% reduction in the requested fees.

> 2.   Billing Deficiencies—Krieg DeVault

Again, the Government requests that the court reduce Krieg DeVault's total fees

by 5% due to alleged deficiencies in billing procedures.  Specifically, Mr. Schratz

complains of the firm's use of block billing and billing in quarter-hour increments.  The

reasonableness of billing in quarter-hour increments is discussed immediately above.

The term "block billing" refers to a single time entry that contains multiple tasks

performed during that time.  For example, on September 25, 2002, Ms. Russell recorded a single time entry of 1.25 hours, during which she performed the following five tasks: "Emailed Gary confirming date to prepare him for deposition; telephone call with Jeff Hunter regarding confirmation of dates in Case Management Plan; prepared letter proposing alternate dates; discussed case with L. Cooley to determine what she had learned from Dr. Clark; reviewed F.R.C.P. 26(a)(2)(B) regarding expert report." (Russell Aff. Ex. EGR-1, 13.)  Mr. Schratz found 274 block billing entries out of 619 total entries on behalf of Krieg DeVault.

While it was not uncommon for Krieg DeVault to use block billing in its time entries, that fact alone is insufficient to justify a reduction of fees.  "Although 'block billing' does not provide the best possible description of attorney's fees, it is not a prohibited practice."  *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006) (affirming the district court's fee award).  In addition, the entries appear to be contemporaneous with the performance of the tasks, and there is no indication that the tasks were fabricated or exaggerated in any means.  Accordingly, Krieg DeVault's billing practices are not sufficiently deficient to justify a 5% reduction.

### 3.    Overstaffing Due to Dual Representation

Krieg DeVault and Ms. Russell began representing Branham in August 2000. Marek & Griffin and Mr. Griffin joined the case in October 2002.  The two firms represented Branham through trial and continue to represent him through the post-trial proceedings.  The Government argues that dual representation from two firms is

inefficient and unreasonable, and that the court should reduce the requested fees by 5% due to the dual representation.

The court finds little merit to this argument. Ms. Russell was lead counsel in this case up through this court's entry of summary judgment in favor of the Government on August 28, 2003. Following summary judgment, Krieg DeVault could no longer bear the risk of continuing as lead counsel in this case on a contingency fee basis. At that point, Marek & Griffin agreed to assume the lead counsel position, and the brunt of the economic risk associated with that position. Krieg DeVault therefore provided the majority of services to Branham prior to August 2003, and Marek & Griffin provided the majority of services subsequent to this date. Because Ms. Russell was more familiar with the legal practice in this district and in the Seventh Circuit, she agreed to stay on as co-counsel.

The court notes that the Government has staffed this case with two attorneys since its early stages as well. It is certainly not uncommon to have two attorneys representing one party in a case such as this. The fact that Mr. Griffin and Ms. Russell are from two firms separated by thousands of miles is of little significance in a world in which advances in technology permit means of fast and easy communication between two such attorneys. Furthermore, the Government has presented no case law in support of its argument on this point. The court therefore concludes that it was not unreasonable to have dual representation involving two law firms in this case.

4.    Multiple Appearances at Deposition and Court Appearances

Both Mr. Griffin and Ms. Russell were present at the November 2002 deposition of Dr. Miller, at the mediation proceedings in September 2005, at various pre-trial conferences in 2005, and at trial in December 2005.  The Government objects to the presence of both attorneys, arguing that it was unnecessary and excessive to have both attorneys present at these proceedings.  Again, the Government fails to mention the fact that it staffed most, if not all, of these same proceedings with two attorneys.  This fact alone is indicative of the little, if any, merit this argument has.  Thus, the court will not reduce the fee request for dual appearances at these proceedings.

5.    Excessive Conferencing—Krieg DeVault

Although the Government's response in opposition to the fee petition objects to excessive conferencing "attributed to efforts to coordinate the litigation with Marek & Griffin," (Def.'s Resp. Opp'n Fee Pet. 11), it is clear from Mr. Schratz's affidavit that the alleged "excessive conferencing" actually refers to intra-firm conferencing that took place between the individuals at Krieg DeVault.   According to the manner in which Mr. Schratz categorized Krieg DeVault's "conferencing" hours, the firm billed 105.05 hours and $29,977.50 in fees, or 11.3% of the total $265,380.00 in fees requested from Krieg DeVault, as time spent "conferencing."[8]  (Schratz Aff. 45.)

---

[8]  These figures refer to the fees billed in the initial fee petition and does not include the figures in the supplemental petition.  The Government claims that the supplemental fee petition contained 10.25 hours, or 7.5% of Krieg DeVault's total billing, dedicated to conferencing.  The analysis remains the same for both the initial and supplemental fee petition.

First, the court notes that Krieg DeVault initially requested $289,931.00, not $265,380.00 in total fees.  Thus, $29,977.50 is equivalent to 10.3%, not 11.3%, of the total initial fees requested by Krieg DeVault.  Second, Mr. Schratz does not explain how he determines what tasks fall under his definition or category of "conferencing."  Neither does he list the specific entries that he categorized as conferencing entries.  The Government's response brief also fails to provide more specific information regarding this challenge.  In fact, the brief refers to "excessive conferencing" in only one sentence (and, as explained above, misinterpreted Mr. Schratz's challenge to excessive conferencing).  Without these specifics, it is difficult for the court to assess the validity of the Government's challenge.  Furthermore, there is no indication that this "conferencing" was fabricated or even unnecessary.  Moreover, in order to attend to the needs presented by this case, it is evident to the court that a great deal of delegation and coordination of activities had to take place within the plaintiff and defense teams.  The docket alone demonstrates the hundreds of court filings that occurred.  The briefs and other submissions by the Plaintiff were generally prompt and well researched and written.  This can be achieved only when appropriate consultation is done within the office to insure that the court receives what is needed.  Similar conferences to coordinate the scheduling and strategizing of other matters, such as deposition and witness preparation, settlement efforts, and other things that never reach the court's attention is also expected.  The court has no doubt that intra-office conferencing played a substantial role in the efficient and successful courtroom presentation of the Plaintiff's case.  For these reasons, combined with the lack of a specific challenge and what

appear to be honest and contemporaneous time entries, the court rejects the Government's challenge to excessive conferencing.

      6.    <u>Excessive Deposition and Trial Preparation—Mr. Griffin</u>

      The Government next complains that Mr. Griffin spent excessive and unreasonable time preparing for the depositions of Drs. Cohen and Butler on August 31, 2005 and for trial in December 2005.  Mr. Griffin billed 48.5 hours to prepare for the depositions of Drs. Cohen and Butler, which took place on August 31, 2005.[9]  The actual taking of the depositions consisted of only 10.5 hours of billed time.  "In the auditor's experience," Mr. Schratz suggests that there should be no more than a 3:1 ratio of preparation time to actual deposition time.  (Schratz Aff. 46.)  In this case, Mr. Schratz opines that 31.5 hours is the maximum reasonably allotted preparation time for the 10.5 hours of deposition.

      First, the court notes that up to 12.5 hours of the 48.5 billed hours were dedicated to travel time to Washington D.C.  (Griffin Aff. 13.)  So, 36 hours is a more accurate total of Mr. Griffin's preparation time for the depositions.  Second, other than referring to his own experience, Mr. Schratz provides no other support for his ratio and the Government fails to direct the court to any case law on this issue.  Finally, Drs. Miller and Butler were the two IRS reviewing doctors who made the original discriminating recommendation to medically disqualify Branham.  Their medical opinions

---

    [9]  Of these 48.5 hours, 12.5 hours were billed to travel time as described by the time entry on August 30, 2005: "Prepare for depos and travel to D.C."  (Griffin Aff. 13.)

disqualifying Branham were central to this case.  Accordingly, 36 hours of preparation to take their depositions (and even 48.5 hours) were not unreasonable in this case.  The court finds that Mr. Griffin's deposition preparation time was reasonable.

In terms of trial preparation time, Mr. Griffin billed 240.25 hours to prepare for trial.  Of that total, 53.5 hours were dedicated to jury instructions, 24.5 hours to the trial exhibits, 21.5 hours to the motions in limine, and 2 hours to the trial notebook.  By comparison, Mr. Griffin billed 45.5 hours for actual trial attendance.  This equates to a ratio of 5.2:1 of preparation time to actual trial time.  Mr. Schratz suggests that Mr. Griffin's trial preparation time was two-times above a reasonable amount.

The court agrees that the preparation time appears to be on the high end, but not necessarily unreasonable.  Mr. Griffin's preparation time included not only time preparing the presentation of evidence to the jury, but also time preparing the presentation of legal arguments to the court (e.g., 53.5 hours dedicated to jury instructions).  It was the court's experience that the parties heavily contested many of the legal issues involved in this case.  Indeed, the court itself dedicated a considerable amount of time to resolving these legal issues and forming the jury instructions.  So, although Mr. Griffin's preparation time was high, the amount of time does not shock the court given the contested issues in the case.  In addition, Mr. Griffin's fee entries appear to be honest and the court is hesitant to second-guess an attorney's judgment in adequately preparing for a heavily contested trial.  The end product was a reasonably efficient presentation of hotly contested matters by the Plaintiff to both the jury and the court.  The expenditure of time reported correlates with the corresponding expenditure

of time by the court and its staff in preparing for the courtroom issues, especially considering that the court's concerns were limited to legal and procedural issues, and did not involve the preparation and presentation of arguments or facts.  Accordingly, the court will not reduce Mr. Griffin's preparation time.

       7.    <u>Excessive Work Product</u>

Mr. Schratz recommends a general 20% reduction on time billed relating to the following pleadings or motions: 1) Krieg DeVault—the complaint, motion to expedite, motion for continuance, motion for fees or costs, motion for leave to amend, motion for reconsideration, motions re pro hac vice, summary judgment motion, motion to bifurcate, motion to compel, Ms. Russell's supplemental fee affidavit, and the motion to strike testimony and evidence; 2) Marek & Griffin—Daubert motion, motion for continuance, motion for fees or costs, motion for reconsideration, summary judgment motion, motion to compel, motion to extend, brief in opposition to instatement, and Mr. Griffin's April 24, 2006 declaration.  Other than listing a line-item reduction for excessive work product, the Government completely fails to describe its contention to the time spent on these motions.  Mr. Schratz provides only a brief discussion relating to the complaint, the Pro Hac Vice motion, the motion to bifurcate, the motion for fees, and the supplemental motions, but nothing relating to the other listed motions.  Through its own review of the time spent on these motions, the court is satisfied that the work related to these motions was reasonably direct and necessary.  The Government has done very little to show otherwise.  Thus, the court will not reduce these hours.

8.    <u>Tasks Not Compensable</u>

The Government highlights five events or tasks that it argues are not compensable.  First, it directs the court to 1.3 hours of billed time by Ms. Russell in January 2005 in which she discussed with Mr. Griffin who will continue to represent Branham and how they plan to go forward with the case.  (Def.'s Resp. Opp'n Fee Pet. 19.)  The court does not find this small amount of billed time unreasonable as counsel appeared to be planning how they were to move the suit forward.  Next, the Government complains of Mr. Griffin's billed travel time to Washington D.C. to take the deposition of Ralph Gay on October 19, 2005.  The Government asserts that Mr. Griffin was already in the D.C. area participating in a seminar.  However, Mr. Griffin asserts that he completed work on this case during the inbound and outbound travel time.  This travel time appears reasonable in light of *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004) (holding that travel time and expenses are compensable).  Third, the Government objects to 4.75 hours billed by Mr. Griffin to correct deficiencies with his Seventh Circuit appellate brief.  The court agrees that Mr. Griffin should not be compensated for time spent to correct an appellate brief that was filed with deficiencies. Thus, the court will **REDUCE** the requested fees by **$1543.75** for the time Mr. Griffin billed to correct the appellate brief.

Next, the Government argues that Branham should not be reimbursed for time spent drafting his motion to strike testimony and evidence, filed April 19, 2006, apparently because the motion was ultimately denied.  This is not a sufficient justification to refuse reimbursement, especially considering that Branham's motion was

not completely without merit.  Without reanalyzing the result reached and the reasons given in the court's resolution of this issue (Docket No. 129), the court correctly implied that the Government's failure to comply with the spirit of the expedited schedule and disclosure requirements justified the Plaintiff's pursuit of the motion to strike.  In an effort to be fair to both sides, the court allowed the testimony, with an opportunity for the Plaintiff to follow-up if he was disadvantaged by the Government's minimal effort to meet the court's intention of allowing prior notice of the expected evidence.  Finally, the Government requests a reduction in fees associated with the briefing and hearing on instatement because it made an instatement offer that Branham rejected.  Branham's rejection of the instatement offer does not justify denying reimbursement for his attorneys' subsequent time and work on the issue.

### 9.   Clerical Work

The Government objects to the request for attorney fees for work performed by paralegals which it believes could have been performed by a clerk or secretary.  "The relevant inquiry for requested paralegal fees is 'whether the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder.'"  *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999) (quoting *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1315 (7th Cir. 1996)).  The court should disallow time spent on tasks that are essentially clerical or secretarial.  *Id.*

-21-

Mr. Schratz compiled a list of entries that he considered to fall under the category of tasks that are essentially clerical in nature.  In compiling this list, Mr. Schratz frequently extracted certain clerical tasks from entries that contained more than one listed task.  For example, Ms. Russell's January 7, 2004 entry billed one hour for the following tasks: "Left vmx for Rocco Spagna; received email from Spagna with new date for briefing; calendared date and telephone call with G. Branham regarding same." (Russell Aff., Ex. EGR-1, 31.)  Mr. Schratz extracted the "calendared date" task and arbitrarily assigned that task 0.5 of the 1.0 billed hours.  It is more reasonable to assume that the calendar portion of this time entry took only 0.25 of the 1.0 billed hours, and the court will figure the clerical fees based on this assumption.  The court's review of Krieg DeVault's time records and of Mr. Schratz's compilations of the same indicates that Ms. Russell billed 2.5 hours ($800.00) for clerical tasks, Ms. Cooley billed 1.0 hours ($285.00) for clerical tasks, and Mr. Deibert billed 0.75 hours ($127.50) for clerical tasks.  The court will **REDUCE** the fee petition by **$1212.50** for the clerical work billed by Krieg DeVault.

The court's review of Marek & Griffin's time records and of Mr. Schratz's compilations of the same indicates that William Smith billed 45.5 hours ($2275.00)[10] for clerical tasks and Mr. Soliz billed 4.55 hours ($341.25) for clerical tasks.  The court will **REDUCE** the fee petition by **$2616.25** for the clerical work billed by Marek & Griffin.

---

[10]  This includes the time billed for clerical tasks in the supplemental bill statement.

10.   Krieg DeVault's Non-Chargeable Time

Krieg DeVault included time entries for non-chargeable time into its computation of fees.  It includes 11.0 hours of time ($2420.00) billed by Ms. Adolay and 6.25 hours[11] of time ($2000) billed by Ms. Russell.  Branham concedes that this time should not be billed or included in the fee petition.  Accordingly, the court will **REDUCE** the fee petition by **$4420.00** for non-chargeable time billed by Krieg DeVault.

11.   April 2, 2004 Entry by Mr. Soliz

The Government argues that Mr. Soliz's April 2, 2004 entry billing 0.75 hours ($56.25) to "[p]repare new disclosure statements for corrected brief" (Griffin Aff. 5) belongs to a different case.  This is clearly related to the present case and will not be excluded from the fee petition.

**C.   Lodestar Adjustment**

Taking into account the above-stated reductions, the court computes the lodestar amount at $720,286.00.  Once the court determines the lodestar amount, it may then reduce or enhance that amount, basing its decision on a variety of factors, including:

> the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained;

---

[11]  This includes the time billed for non-chargeable time in the supplemental bill statement.

the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases.

*Mathur v. Bd. of Tr. of S. Ill. Univ.*, 317 F.3d 738, 742 n.1 (7th Cir. 2003).  The degree of success achieved is the most critical factor.  *See Hensley v. Eckerhart*, 461 U.S. 424, 434, 35-36 (1983); *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

Despite the Government's contestation otherwise, this case was not the typical employment discrimination case.  Branham brought this suit in 2001.  This court entered summary judgment in favor of the Government on August 28, 2003.  Branham appealed the ruling to the Seventh Circuit and the Seventh Circuit remanded it back to this court.  Upon remand, both parties vigorously litigated many issues in this case through trial, and continue to do so through the post-trial issues, over five years after the commencement of this suit.  In the end, Branham's attorneys obtained a favorable jury verdict.  As a result, Branham will receive significant equitable relief in the form of backpay and frontpay.  Given these factors, the court is unwilling to reduce the lodestar amount, as the Government requests.

At the same time, the court does not believe that this case falls within the category of "cases of exceptional success" that would justify an enhancement of the lodestar amount.  *Blum v. Stenson*, 465 U.S. 886, 901 (1984).  A strong presumption lies in favor of the lodestar figure as reflecting reasonable fees for the representation.  *Id.* at 898.  In *Hensley*, the Court explained that "where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will

-24-

encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhancement award may be justified." *Hensley*, 461 U.S. at 435.  The court recognizes that this case required a significant amount of hours and sufficient expertise on the part of Branham's attorneys.  Indeed, these are reasons why the court justified awarding the attorneys a high, but reasonable, hourly rate.  But this case does not merit "exceptional" status, and the court will not grant the request for a lodestar enhancement.  Accordingly, the court will not reduce or enhance the lodestar amount.

## II.   COSTS AND RECOVERABLE EXPENSES

Branham seeks an award for costs totaling $90,300.60.  (Mem. Supp. Fee Pet. Ex. 5; Supplement Fee Pet. 1-2; May 24, 2006 Griffin Aff.)  More specifically, Krieg DeVault asserts costs for electronic research ($2906.49), transcripts ($2977.95), photocopies ($4142.60), postage ($267.92), telecopies ($522.00), shipping ($170.03), telephone charges ($193.21), office and binding supplies ($53.70), travel costs ($1055.00), fees of the clerk ($285.00), and witness and mileage fees ($150.00), for a total of $12,723.90.  (*Id.*)  Marek & Griffin asserts costs for electronic research ($15,394.96), transcripts ($6424.22), photocopies ($3031.15), postage ($174.11), telecopies ($58.25), shipping ($1235.73), telephone charges ($262.24), travel costs ($12960.40), fees of the clerk ($15.00), expert witness fees ($16,495.00), consultant fees ($19,633.00), medical records ($15.37), mediation ($1071.00), conference room rental ($181.27), and a bill to Hoover Hull LLP ($625.00), for a total of $75,091.35.  (*Id.*)

In addition to attorney's fees, a prevailing party can recover costs that are recoverable under statute or rule, reasonable in amount, and necessary to the litigation. *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 345 (7th Cir. 1995); *Weihaupt v. Am. Med. Ass'n*, 874 F.2d 419, 430 (7th Cir. 1989).  Federal Rule of Civil Procedure 54(d) provides that "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs."  These costs are limited to items expressly listed in 28 U.S.C. § 1920:

> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920; *see also Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987).  In addition, the Rehabilitation Act contains a fee-shifting provision that allows the court to award the prevailing party "a reasonable attorney's fee as part of the costs." 29 U.S.C. § 794a(b).[12]  Accordingly, certain out-of-pocket expenses, including postage, long-distance telephone calls, photocopying, expert witness fees, and travel expenses, may be recoverable, not as "costs," but as part of a "reasonable attorney's fee," even

---

[12]  Section 794a fee awards are governed by the same considerations controlling in § 1988 actions.  *Jones v. Ill. Dep't of Rehab. Servs.*, 689 F.2d 724, 730 (7th Cir. 1982).

though they are listed separately from the hourly rate.  *Heiar v. Crawford County*, 746 F.2d 1190, 1203 (7th Cir. 1984); *see also Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1144 (7th Cir. 1994).  While the court will discuss the following costs and expenses under the heading "Costs," it recognizes that many of these expenses are more appropriately identified as part of a reasonable attorney's fee.

### A.    Electronic Legal Research

Computer research costs "are more akin to awards under attorney fee provisions than under costs."  *McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990).  The Seventh Circuit has allowed recovery of reasonable electronic legal research charges, *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 526 (7th Cir. 1995), and the Government concedes that these expenses are "allowable if reasonable."  (Def.'s Resp. Opp'n Fee Pet. 26.)  However, the Government argues that Krieg DeVault and Marek & Griffin failed to provide sufficient information regarding the research charges to allow the court to rule on the reasonableness of these charges. The court disagrees.  Krieg DeVault lists the days in which it incurred electronic legal research expenses, along with the amount of that daily expense.[13]  Marek & Griffin provides its computer research expenses on a monthly basis.  These expenses appear reasonable, considering the long duration of this case and the amount of litigation time involved.  The court received the results of this research in the form of numerous Plaintiff's briefs, and as noted, they were uniformly well done and generally helpful to

---

[13]  The only exception is the Westlaw fee of $716.68 indicated in the supplemental bill statement.

the court.  Accordingly, the court will **ALLOW** the charge for computerized legal research of **$2906.49** for Krieg DeVault's expenses and **$15,394.96** for Marek & Griffin's expenses.

### B.    Transcripts

Branham asks for taxable costs of $9402.17 for fees of the court reporter for copies of transcripts of multiple depositions, the transcripts of two pretrial hearings,[14] the transcript of closing arguments at trial, and the transcript of a post-trial hearing.  The Government appears to concede these costs as taxable, with a few exceptions.  Transcript charges are generally taxable as long as the transcript was necessary.  The court finds this cost permissible as a reasonable and necessary expense for trial preparation and litigation of post-trial issues.  The court will **ALLOW** the taxable costs of **$2977.95** for Krieg DeVault's costs and **$6424.22** for Marek & Griffin's costs of the transcripts.

### C.    Photocopies

Branham claims $7173.75 in photocopy expenses, of which Krieg DeVault incurred $4142.60 in expenses and Marek & Griffin incurred $3031.15[15] in expenses.

---

[14]  Krieg DeVault lists a cost of $204.18 for the transcript of the November 21, 2005 hearing.  Marek & Griffin lists a cost of $660.00 for the transcript of the December 1, 2005 pretrial conference.

[15]  In its supplemental bill statement, Marek & Griffin claim a $100.00 cost attributed to "trial-office supplies & copies."  The court will not award reimbursement for costs associated with office supplies.  Because the entry does not divide the office supply costs from the copying costs, the court will **DISALLOW** the entire entry of **$100.00**.

Photocopy expenses are recoverable as part of the attorney's fee award as long as the per copy charge is reasonable. *See, e.g., NLFC, Inc. v. Devcom Mid-Am., Inc.*, 916 F. Supp. 751, 762 (N.D. Ill. 1996). The Government concedes that Krieg DeVault's $0.20 per copy charge is reasonable. The court finds that Marek & Griffin's $0.15 per copy charge is also reasonable. Finally, the Government challenges Krieg DeVault's charge of $95.40 for copy services from a third party. Krieg DeVault's invoice does not indicate the per copy charge incurred from the third party. Accordingly, the court will **DISALLOW** the **$95.40** for copy services from the third party, but will **ALLOW** the following copying expenses: **$4047.20** for Krieg DeVault's expenses, and **$2931.15** for Marek & Griffin's expenses.

### D.      Postage and Shipping

Although not taxable under § 1920, postage is generally recoverable as part of the reasonable attorney's fee, even if billed separately from the hourly fee. *Downes*, 41 F.3d at 1144 (quoting *Heiar*, 746 F.2d at 1204). Branham claims postage (United States Postal Service) expenses of $442.03 and overnight shipping (e.g., Federal Express) expenses of $1405.76. These expenses are appropriately recorded in the firms' invoices and appear to be reasonably necessary for litigation. Thus, the court will **ALLOW** the postage and shipping expenses requested: **$437.95** for Krieg DeVault's expenses, and **$1409.84** for Marek & Griffin's expenses.

### E.    Telecopies (Facsimile Charges)

Telecopies are not taxable under § 1920.  However, telecopies appear to fit within the categories enumerated in *Downes*, which include similar expenses, i.e., xeroxing and long-distance telephone expenses.  Branham asks to recover $580.25 in attorney expenses charged to telecopies.  Again, this appears to be a reasonable expense, given the duration of this case.  The court will **ALLOW** the requested expenses related to the telecopies: **$522.00** for Krieg DeVault's expenses, and **$58.25** for Marek & Griffin's expenses.

### F.    Telephone Expenses

Telephone expenses are recoverable as part of the reasonable attorney's fee. *Downes*, 41 F.3d at 1144 (quoting *Heiar*, 746 F.2d at 1204).  Here, the Government concedes Branham's recovery of the requested telephone expenses, and thus the court will **ALLOW** the requested telephone expenses: **$193.21** for Krieg DeVault's expenses, and **$262.24** for Marek & Griffin's expenses.

### G.    Office and Binding Supplies

Branham asks to recover $54.70 for Krieg DeVault's expenses related to various office supplies and binding services.  These are expenses that are generally included in the attorney's reasonable hourly rate.  Thus, the court will **DISALLOW** recovery of these expenses.

### H.    Travel Expenses

Travel and meal expenses are the sort of things that a lawyer includes with a bill for professional services.  *Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997).  They are not taxable under § 1920, but are recoverable as part of the attorney's fee, if reasonable.  *Id.*  Here, Krieg DeVault (Ms. Russell) asks for $1055.00 as reimbursement for travel expenses, and Marek & Griffin (Mr. Griffin) asks for $12,960.40 as reimbursement for travel expenses.  Mr. Griffin's travel expenses are not surprising, as he resides in Texas and had to travel to multiple depositions, hearings, the trial, and two post-trial hearings.  The court finds these expenses reasonable and will **ALLOW** the requested amounts.

### I.    Fees of the Clerk

Branham requests costs associated with filing fees of the clerk.  These costs are taxable under § 1920 and are not disputed by the Government.  The court will **ALLOW** these costs: **$285.00** for fees paid by Krieg DeVault, and **$15.00** for fees paid by Marek & Griffin.

### J.    Witness and Mileage Fees

Branham also asks for appropriate witness and mileage costs taxable under § 1920.  The Government does not contest this cost request.  The court will **ALLOW** Branham **$150.00** for Krieg DeVault's costs associated with the witness and mileage fees.

### K.    Expert Witness Expenses:

Marek & Griffin asserts an expense of $16,495.00 in expert witness fees.  Expert witness expenses are clearly not taxable under § 1920.  *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 86-87 (1991) (stating that expert witness fees are not taxable under § 1920).  However, reasonable and necessary costs for expert witnesses are recoverable as part of the attorney's fee.  *Downes*, 41 F.3d at 1144 (quoting *Heiar*, 746 F.2d at 1204).

First, Marek & Griffin claims an expense of $12,300.00 for the services of Branham's medical expert, Dr. Charles M. Clark.  The Government argues that Dr. Clark's fee should be disallowed because it is not adequately documented.  The court disagrees.  Dr. Clark was Branham's medical expert from the summary judgment stage of the proceedings through trial.  Branham has attached Dr. Clark's invoice, which describes Dr. Clark's fee in sufficient detail.  (Mem. Supp. Fee Pet. Ex. 5, at 6.) Accordingly, the court will **ALLOW** reimbursement for Dr. Clark's services in the amount of **$12,300.00**.

Next, Marek & Griffin claims an expense of $3975.00 for the services of Charles Bullock, who provided expert opinion for Branham on the issue of reasonable front pay. Mr. Bullock traveled from Texas to provide his expert opinion during the post-trial hearing on equitable relief.  The requested expense appears reasonable for his services, and the court will **ALLOW** reimbursement in the amount of **$3975.00**.

Finally, Marek & Griffin appears to claim an expense of $220.00 to have Dr. Carl Hansen review documents.  Branham never used Dr. Hansen as an expert witness and Marek & Griffin does not specify his role in the proceedings.  Thus, the court will **DISALLOW** recovery of **$220.00** for his services.

### L.      Consultation Services and Fees of Exemplification

Branham seeks to recover $11,758.00 for "trial graphics and presentation" services provided to Marek & Griffin by Reetz & Associates, and $7875.00 for trial consultation services provided to Marek & Griffin by MetaSystems, Ltd.  While Branham groups these two expenses together, they are actually quite different.

First, the cost for the preparation and presentation of "graphics" for trial are costs that are taxable under § 1920(4), which states that the court may tax "[f]ees for exemplification and copies of papers necessarily obtained for use in the case."  28 U.S.C. § 1920(4).  "[T]he costs for the copying and collating of exhibits and the graphics charges fall squarely within this language."  *Haroco, Inc. v. Am. Nat'l Bank and Trust Co. of Chi.*, 38 F.3d 1429, 1441 (7th Cir. 1994) (affirming the district court's award of $12,389.71 as costs related to preparation and presentation of graphics and exhibits at trial).  Branham submits an invoice from Reetz & Associates billing Marek & Griffin $11,758.00 for their services.  The invoice provides very little detail describing what services were actually rendered.  However, the court recalls that both parties had technical support staff at the trial to assist in the presentation of the case, which demonstrates that the Government thought it necessary to have similar technical

-33-

support as the one it challenges as unnecessary here.  The court finds that this service was reasonable and will **ALLOW $11,758.00** as taxable costs for the services of Reetz & Associates.

The services of MetaSystems, Inc. involved trial consultation provided to Marek & Griffin.  This appears to be a typical trial consultation fee, in which MetaSystems, Inc. reviewed the case and provided strategic advice to Mr. Griffin on how he should present the case.  This type of service does not fall under the exemplification category in § 1920.  Furthermore, it is not a reasonable and necessary expense.  The court is awarding Mr. Griffin and Ms. Russell their requested hourly rates, which the Government strongly contests are excessive.  As explained above, the court awarded these rates in part due to their level of experience and expertise in these matters.  Due to this level of experience and expertise, it was not necessary or reasonable for Mr. Griffin to acquire trial consultation services from MetaSystems, Inc.  Accordingly, the court will **DISALLOW** the consultation expense of **$7875.00**.

## M.    Medical Records

Branham asks the court to reimburse Marek & Griffin the expense of $15.37 to retrieve certain medical records associated with the case.  This expense is not a taxable cost under § 1920, but is a reasonable and necessary expense and will be **ALLOWED** as part as the reasonable attorney's fee.

### N.     Mediation Fees

The Government does not dispute Branham's request of the mediation fees, and thus the court will **ALLOW** the requested expense as part of the reasonable attorney's fee: **$1071.00** for mediation expenses paid by Marek & Griffin's.

### O.     Conference Room Rental

Branham seeks recovery of $187.27 for "conference room rental" paid by Marek & Griffin on October 19, 2005.  This expense is not taxable under § 1920 and the court will disallow the expense because Branham's council fails to identify the reason for the room rental.  Without more detailed information, the court cannot assess the reasonableness of the expense.  The expense is **DISALLOWED**.

### P.     Hoover Hull Invoice

Marek & Griffin's supplemental bill statement lists a cost of $625.00 as "Hoover Hull LLP - Inv. 20748."  Branham fails to explain this cost.  To the court's knowledge, Hoover Hull had no involvement with this case.  As such, the court will **DISALLOW** this cost.

## III.     CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART** and **DENIES IN PART** the Plaintiff's Motion for Reasonable Attorneys' Fees and Costs (Docket No. 86) and Plaintiff's supplement to the motion (Docket No. 142).  The Plaintiff will be **AWARDED**

$779,826.06 for reasonable attorneys' fees (including both hourly fees and other reasonable fees) and $21,610.17 for taxable costs.  The court attaches Appendix A to further detail the fee and cost award.  A judgment on attorneys' fees and costs in the amount of $801,436.23 in favor of the Plaintiff will be entered.  Finally, the court **DENIES** the Plaintiff's Motion to Strike (Docket No. 148).

ALL OF WHICH IS ENTERED this 19th day of June 2006.

John Daniel Tinder, Judge
United States District Court

Copies to:

John W. Griffin Jr.
Houston Marek & Griffin LLP
jwg@lawhmg.com

Jeffrey L. Hunter
United States Attorney's Office
jeff.hunter@usdoj.gov

Debra G. Richards
United States Attorney's Office
debra.richards@usdoj.gov

Elizabeth Gardner Russell
Krieg Devault
egr@kdlegal.com

Magistrate Judge William T. Lawrence

# APPENDIX A

## Attorneys' Fee and Cost Award

| | | | |
|---|---|---|---|
| **Hourly Fee** | | | **$720,286.00** |
| | Krieg Devault | $328,269.75 | |
| | Marek & Griffin | $392,016.25 | |
| **Other Reasonable Fees** | | | **$59,540.06** |
| Electronic Research | | $18,301.45 | |
| | Krieg Devault | $2,906.49 | |
| | Marek & Griffin | $15,394.96 | |
| Photocopies | | $6,978.35 | |
| | Krieg Devault | $4,047.20 | |
| | Marek & Griffin | $2,931.15 | |
| Postage & Shipping | | $1,847.79 | |
| | Krieg Devault | $437.95 | |
| | Marek & Griffin | $1,409.84 | |
| Telecopies | | $580.25 | |
| | Krieg Devault | $522.00 | |
| | Marek & Griffin | $58.25 | |
| Telephone | | $455.45 | |
| | Krieg Devault | $193.21 | |
| | Marek & Griffin | $262.24 | |
| Travel | | $14,015.40 | |
| | Krieg Devault | $1,055.00 | |
| | Marek & Griffin | $12,960.40 | |
| Expert Witness | | $16,275.00 | |
| | Marek & Griffin | $16,275.00 | |
| Medical Records | | $15.37 | |
| | Marek & Griffin | $15.37 | |
| Mediation | | $1,071.00 | |
| | Marek & Griffin | $1,071.00 | |
| **Taxable Costs:** | | | **$21,610.17** |
| Transcripts | | $9,402.17 | |
| | Krieg Devault | $2,977.95 | |
| | Marek & Griffin | $6,424.22 | |
| Fees of the Clerk | | $300.00 | |
| | Krieg Devault | $285.00 | |
| | Marek & Griffin | $15.00 | |
| Witness and Mileage Fees | | $150.00 | |
| | Marek & Griffin | $150.00 | |
| Exemplification | | $11,758.00 | |
| | Marek & Griffin | $11,758.00 | |
| **Total Fee and Cost Award** | | | **$801,436.23** |

APPENDIX A